IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY CYPRIEN,

                Petitioner,

        vs.

GARY SWARTHOUT,[1] Warden (A),
California State Prison, Solano,

              Respondent.

No. 2:08-cv-00379-JKS

MEMORANDUM DECISION

Petitioner, Tony Cyprien, a state prisoner appearing *pro se*, has filed a petition for relief under 28 U.S.C. § 2254.  Cyprien is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.  Respondent has answered, and Cyprien has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial in September 1986, Cyprien was convicted in the Los Angeles County Superior Court of first-degree murder (Cal. Penal Code § 187), with a firearm enhancement (Cal. Penal Code § 12022(a)).  Cyprien was sentenced to a prison term of 26 years to life.  Cyprien does not challenge his conviction or sentence in this proceeding.  In September 2006, represented by counsel, Cyprien made his second appearance before the Board of Parole Hearings ("Board"), which declined to set a parole date for three years.  Cyprien, appearing *pro*

---

[1] Gary Swarthout, Warden (A), California State Prison, Solano, is substituted for D. K. Sisto, Warden, California State Prison, Solano.  Fed. R. Civ. P. 25(d).

*se*, timely petitioned the Los Angeles County Superior Court for habeas corpus relief.  The Los Angeles County Superior Court denied his petition in an unreported, reasoned opinion.  Cyprien then filed a petition for habeas corpus relief in the California Court of Appeal, Second Appellate District, which summarily denied his petition without opinion or citation to authority.  Cyprien timely filed a petition for review of the California Court Appeal decision in the California Supreme Court, which the California Supreme Court summarily denied without opinion or citation to authority on February 13, 2008.  Cyprien timely filed his petition for relief in this Court on February 16, 2008.

The facts of the crime of which Cyprien was convicted, as recited by the Los Angeles County Superior Court are:

> The record reflects that on September 4, 1985, petitioner and several other members of the Front Street Crips street gang approached the victim.  One of the Crips asked the victim where he was from to determine if he was in a rival gang.  Before the victim was able to answer, petitioner shot at him.  The victim died from multiple gunshot wounds.  The shooting was retaliation for a shooting of a fellow gang member.[2]

## II.  GROUNDS RAISED/DEFENSES

In his petition, Cyprien raises three grounds for relief:  (1) that the regulations promulgated by the California Department of Corrections and Rehabilitation are unconstitutional; (2) the "some evidence" standard of review is improper; and (3) the decision of the Board was unsupported by relevant, reliable evidence.  Respondent asserts no affirmative defense.[3]

---

[2] Docket No. 13-3, p. 2.

[3] Rules—Section 2254 Cases, Rule 5(b).

2

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be objectively unreasonable, not just incorrect or erroneous.[8]   The Supreme Court has made clear

that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[9]   "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]   In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[11]   Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

       In applying this standard, this Court reviews the last reasoned decision by the state

court,[13] which, in this case, is that of the Los Angeles County Superior Court.  Under AEDPA,

the state court's findings of fact are presumed to be correct unless the petitioner rebuts this

---

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

presumption by clear and convincing evidence.[14]  This presumption applies to state trial courts and appellate courts alike.[15]

IV.  DISCUSSION

Two arguments raised by the Respondent and Cyprien's second ground may be disposed of quickly.  First, that a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment is well settled.[16]  Second, it is equally as well settled that a decision of the California Board of Parole Hearings to deny a prisoner parole must be supported by some evidence in the record.[17]  Thus, Respondent's arguments on those two points and Cyprien's second ground are foreclosed by controlling authority.[18]

Ground 1:  Constitutionality of Board Regulations.

Cyprien contends that the regulations governing the factors to be considered in parole hearings adopted by the California Department of Corrections and Rehabilitation ("CDCR") are invalid because those regulations exceed the rule-making authority delegated to the CDCR by the California Legislature.  Cyprien argues that, under California Penal Code § 3041(b), the Board is limited to consideration of the gravity of the convicted offense.[19]

---

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[16] *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

[17] *Id.* at 1128–29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).

[18] Respondent candidly acknowledges that his contrary positions are foreclosed by controlling authority and only raises them in order to preserve the issue for appeal.

[19] Cal. Pen. Code § 3041 provides in relevant part:

(continued...)

5

It appears from the record before this Court that Cyprien first raised this issue in his petition for state habeas relief filed with the California Court of Appeal.  As the Court of Appeal summarily denied Cyprien's petition, the issue was not addressed.  When there is no reasoned state-court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state-court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[20]  The scope of this review of the state-court ruling on the petition is for clear error:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[21]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[22]

---

[19](...continued)
(b) The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

[20] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[21] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[22] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Although he has cited numerous California cases addressing the scope of administrative agency powers to adopt regulations, Cyprien has not cited any case holding that the regulations applicable to the grant of parole in California are invalid on the basis that they violate the Constitution of the United States.  More notably, Cyprien has cited no authority for the proposition that federal courts may invalidate a regulation promulgated by a state administrative agency on the grounds that it exceeded the authority delegated by the state legislature.  The extent to which the California Legislature has delegated rule-making authority to the California Department of Corrections and Rehabilitation is strictly one of state law governed by the state's constitution.[23]  As such, it is beyond the purview of this Court in a federal habeas proceeding.[24] "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[25]  The California Supreme Court recently held that "[t]he Legislature has given the CDCR and its DAPO expansive authority to establish and enforce rules and regulations governing parole, and to impose any parole conditions deemed proper."[26]  The California Supreme Court has also recently clearly indicated that the touchstone

---

[23] *See Pacific States Box & Basket Co. v. White*, 296 U.S. 176, 186 (1935) (noting that whether a state legislature could delegate its power involved solely a question of state law).

[24] *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[25] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[26] *In re E.J.*, 223 P.3d 31, 47 n.10 (Cal. 2010) (citing Cal. Pen. Code §§ 3052, 3053; *see*
(continued...)

of § 3401(b) is public safety and reaffirmed that, in setting a parole date, the Board "must

consider the statutory factors concerning parole suitability set forth by section 3041 *and board

regulations* (Regs. § 2230 et seq) . . . ."[27]  The California Supreme Court applied the provisions

of the regulations in determining whether "the inmate poses 'an unreasonable risk of danger to

society if released from prison,' and thus whether he or she is suitable for parole."[28]

  In the constitutional due process context, as relevant to this case, a state prison regulation

must have "a 'valid, rational connection' between the prison regulation and the legitimate

governmental interest put forward to justify it."[29]  Cyprien's sole argument is that the regulations

exceed the rule-making authority delegated to CDCR.  Cyprien does not argue that the

regulations do not have a valid rational connection with a legitimate penological goal.  Nor does

it appear to this Court that a lack of such nexus exists.  Because he has failed to present an issue

of federal constitutional dimension, Cyprien is not entitled to relief under his first ground.

  <u>Ground 2:  "Some Evidence" Standard</u>.

  Cyprien contends that the "some evidence" standard applied by the California courts is

not the appropriate standard.  Cyprien argues that, under United States Supreme Court authority,

---

[26](...continued)
*Terhune v. Superior Court*, 76 Cal.Rptr.2d 841, 846 (Cal. App. 1998)).  Cal. Pen. Code § 3052
provides:
> The Board of Prison Terms shall have the power to establish and enforce rules and
> regulations under which prisoners committed to state prisons may be allowed to
> go upon parole outside the prison buildings and enclosures when eligible for
> parole.

[27] *In re Lawrence*, 190 P.3d 535, 546-47 (Cal. 2008) (emphasis added).

[28] *Id.* (applying Cal. Code Regs., tit. 15, § 2281) (internal quotation marks omitted).

[29] *Turner v. Safley*, 482 U.S. 78, 89 (1987) (quoting *Block v. Rutherford*, 468 U.S. 576,
578 (1984)).

the proper standard is the standard generally applied to review of the decisions of administrative agencies—the "substantial evidence" standard.  As noted above, Cyprien's argument is foreclosed by controlling authority.[30]  Cyprien is not entitled to relief on his second ground.

Ground 3:  Sufficiency of Evidence.

Cyprien contends that his commitment offense is not relevant, reliable evidence that he is currently an unreasonable risk of danger to the public.  Cyprien further challenges the sufficiency of the evidence to support a finding that:  (1) he carried out the commitment offense in a dispassionate and calculated manner (execution-style); (2) was an exceptionally callous disregard for human suffering; or (3) the motive was trivial in relation to the offense.  Cyprien also argues that his age at the time of the offense renders the gravity of commitment offense unreliable and that his juvenile record and social history are not relevant, reliable evidence of his current risk to public safety.  Finally, Cyprien contends that the Board overlooked overwhelming evidence that he poses a low risk to public safety if released on parole, citing his remorse and insight into the nature and gravity of the commitment offense, his realistic parole plans and marketable skills, and his behavior while incarcerated.   In rejecting Cyprien's position, the Los Angeles Superior Court held:

> The Court has read and considered [Cyprien's] Writ of Habeas Corpus filed on January 22, 2007.  Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that [Cyprien] is unsuitable for parole  (See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz).)*
>
> * * * *.

---

[30] *Sass*, 461 F.3d at 1128-29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).

The Board found [Cyprien] unsuitable for parole after a parole consideration hearing held on September 12, 2006. [Cyprien] was denied parole for three years. The Board concluded that [Cyprien] was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The Court finds that there is some evidence to support the board's finding that "the motive for the crime is inexplicable or very trivial in relation to the offense" (Cal. Code Regs., tit. 15, §2402, subd. (c)(I)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2004) 119 Cal.App.4th 871, at 893). The motive in this case was gang retaliation for another shooting. There is no indication that the victim in this case was involved in the prior shooting of petitioner's friend. [Cyprien] did not even ascertain that the victim was a member of the rival gang responsible for the shooting. The Board was justified in concluding that gang retaliation is a materially less significant motive than those which conventionally drive people to commit first degree murder.

The record further reflects that the Board relied on an additional factor in denying parole at this time and there is some evidence to support that decision. There is some evidence that petitioner is unsuitable for parole due to his "previous record of violence." (Cal. Code Regs., tit. 15, §2402, subd. (c)(2).) As a juvenile he was arrested and placed under voluntary supervision for possession of a rifle. He was also found guilty of burglary, for which he was made a ward of the state. Later that year, he was arrested for robbery when he got involved in a fight. He was found guilty and was ordered to remain a ward of the state. Because petitioner had been placed on probation and served time in the California Youth Authority prior to the commitment offense, the Board found that [Cyprien] failed to profit from society's previous attempts to correct his criminality. They also found that his involvement with street gangs starting at the age of eleven indicated an unstable social history. ." (Cal. Code Regs., tit. 15, §2402, subd. (c)(3).) Therefore, there is some evidence to support the Board's finding that [Cyprien] is unsuitable for parole.[31]

As germane to this ground, Cyprien challenges the Board's reliance upon the nature of his commitment offense to deny him a parole.[32] In *Biggs*, the Ninth Circuit indicated that, although

---

[31] Docket No. 13-3, pp. 2-3.

[32] Under California law, "[t]he nature of the prisoner's offense, alone, can constitute a

(continued...)

the commitment offense provides some evidence of unsuitability for parole, "[a] continued

reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior

to imprisonment, runs contrary to the rehabilitative goals espoused by the system and could result

in a due process violation."[33]  It is this principle that Cyprien has drawn into issue in this case.

There is, as this Court has noted in other cases, a lack of clear guidance from the Ninth

Circuit on this issue.  Where the line of demarcation that triggers a violation of the Due Process

Clause referred to in *Biggs* lies is unknown.  *Sass* and *Irons* appear to make it dependent, at least

in significant part, upon the gravity of the commitment offense, how heinous it was, *e.g.*, the

extent to which the prisoner acted in callous disregard for human life, the degree of depravity or

---

[32](...continued)
sufficient basis for denying parole." *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002).  The Board
must, however, "point to factors beyond the minimum elements of the crime for which the
inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing,
present a danger to society if released.  *In re Dannenberg,* 34 Cal.4th 1061, 1071, 1095 (Cal.
2005).  Also, "the statutory and regulatory mandate to normally grant parole to life prisoners who
have committed murder means that, particularly after these prisoners have served their suggested
base terms, the underlying circumstances of the commitment offense alone rarely will provide a
valid basis for denying parole when there is strong evidence of rehabilitation and no other
evidence of current dangerousness." *Lawrence*, 190 P.3d at 553.  Where, however, the record
also contains evidence demonstrating that the inmate lacks insight into his or her commitment
offense or previous acts of violence, even after rehabilitative programming tailored to addressing
the issues that led to commission of the offense, the aggravated circumstances of the crime
reliably may continue to predict current dangerousness even after many years of incarceration.
*See In re Shaputis*, 190 P.3d 573, 584–85 (Cal. 2008).  "Factors beyond the minimum elements
of the crime include, (1) the commitment offense, where the offense was committed in 'an
especially heinous, atrocious or cruel manner'; (2) the prisoner's previous record of violence; (3)
'a history of unstable or tumultuous relationships with others'; (4) commission of 'sadistic sexual
offenses'; (5) 'a lengthy history of severe mental problems related to the offense'; and (6)
'serious misconduct in prison or jail.'" *Irons v. Carey*, 505 F.3d 846, 851 n.4 (quoting Cal.
Code. Regs., tit. 15 § 2402(c)).

[33] *Biggs v. Terhune*, 334 F.3d 910, 916-17 (9th Cir. 2003).

cruelty shown, and the nature of the victim.[34]  The holding in *Irons* established a bright-line test

of sorts, *i.e.*, a crime that is more heinous, atrocious, callous, or cruel than that committed by

Sass,[35] is sufficient to satisfy due process, despite evidence of exemplary behavior in prison and

evidence of rehabilitation and the lack of a prior criminal record.[36]  *Irons* did not, however,

address the question posed by *Biggs*—at what point in time does the nature of the commitment

offense become so attenuated that, standing alone, it no longer constitutes "some evidence" to

support a finding that a prisoner's release would unreasonably endanger public safety?[37]

From *Biggs*, *Sass*, and *Irons*, a district court can glean certain guiding principles in ruling

on a California prisoner's application for a writ of habeas corpus addressed to the denial of

parole.  First, a California prisoner has a liberty interest in parole protected by the Due Process

Clause.  Second, the test to be applied is whether some evidence indicates a prisoner's release

unreasonably endangers public safety.  Third, at least until such time as the prisoner has served

---

[34] *Irons*, 505 F.3d at 853–54.

[35] Sass was convicted of second-degree murder, gross vehicular manslaughter, hit and run death, causing injury while driving under the influence, and felony drunk driving, arising out of an automobile accident in which a death occurred.  He was sentenced to 15 years to life with the possibility of parole.  Prior to his conviction of second-degree murder, Sass had been convicted on seven separate occasions for DUI.
Irons was convicted of second degree murder and sentenced to 17 years to life in prison with the possibility of parole.  After an angry confrontation with the victim, Irons went to his room, retrieved his gun, and then went to the victim's room where he fired 12 rounds into the victim and, after the victim complained that he was in pain, stabbed him twice in the back.  He then wrapped the victim's body in a sleeping bag and left it in the room for the ten days it took him to procure a car.  Irons then took the body to the coast, weighed it down, and disposed of it in the ocean.  Prior to his conviction, Irons had no criminal record.

[36]*Irons*, 505 F.3d 853-54.

[37] In *Irons*, as well as *Sass* and *Biggs*, the determination denying parole was made prior to the time that the petitioner had served the minimum term to which he was sentenced.

the minimum sentence imposed, denial of a parole date solely upon the basis of the commitment offense more likely than not does not violate the Due Process Clause.  Fourth, a district court must examine the record for sufficient evidence to support the finding of the Board that release would unreasonably endanger public safety.  Fifth, the extent to which the gravity of the commitment conviction is attenuated by time, assuming that all other factors properly considered are either neutral or positive, is dependent upon (1) the nature of the commitment offense and (2) whether there has been a significant time lapse since the offense was committed.

Cyprien has also challenged the sufficiency of the evidence to support the various factors, other than the commitment offense, found by the Board to support its determination that he posed an unreasonable risk of harm to the public if released on parole.  The determination of whether the release of a prisoner on parole will pose an unreasonable risk of danger to society in a particular case is committed to the judgment of the Board,[38] weighing not just a single, but several factors.[39]  In this case, the Board clearly considered and weighed the relevant factors as

---

[38] *Lawrence*, 190 P.3d at 547 (citing *Rosenkrantz*, 59 P.3d at 204).  Cal. Code Regs., tit. 15, § 2402(a) provides (emphasis added):

> (a) General.  The panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if *in the judgment of the panel* the prisoner will pose an unreasonable risk of danger to society if released from prison.

[39] *Shaputis*, 190 P.3d at 583.  Cal. Code Regs., tit. 15, § 2402(b) provides: Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special

(continued...)

mandated by the regulations and determined that, in the Board's judgment, Cyprien posed "an

unreasonable risk of danger to society if released from prison."  It is not the province of a federal

court in a habeas proceeding to re-weigh the evidence or substitute its judgment for that of the

Board.[40]

Based upon the record before it, applying the teachings of *Biggs*, *Sass*, and *Irons*, this

Court cannot say that the decision of the Los Angeles Superior Court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or  "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."[41]  Nor can this Court find

that the state court unreasonably applied the correct legal principle to the facts of Cyprien's case

within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than

incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Cyprien is not entitled to relief under his third ground.

---

[39](...continued)
conditions under which the prisoner may safely be released to the community; and
any other information which bears on the prisoner's suitability for release.
Circumstances which taken alone may not firmly establish unsuitability for parole
may contribute to a pattern which results in a finding of unsuitability.

[40]Although not directly applicable to this case, the constitutional standard for sufficiency
of the evidence to support a criminal prosecution, "after viewing the evidence in the light most
favorable to the prosecution, *any* rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt," set forth in *Jackson v. Washington*, 443 U.S. 307, 319
(1979) (emphasis in the original), provides guidance as to the appropriate standard to be applied.
Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if
accepted as credible by the Board, sufficient to sustain its determination that Cyprien posed a
significant risk of harm to the public if released on parole.  *See Schlup v. Delo*, 513 U.S. 298, 340
(1995).

[41] 28 U.S.C. § 2254(d).

## V. CONCLUSION/ORDER

Cyprien is not entitled to relief under any ground raised in his Petition.  Furthermore, Cyprien has yet to serve his minimum term.  Even assuming he was in custody from the time of the offense (September 1985) and was given credit for the time served prior to his conviction in September 1986, his minimum term, exclusive of any otherwise applicable good time credit, does not expire until September 2011.  There is no authority for the proposition that a state prisoner has a constitutionally protected right, under any theory, to a parole date before the end of his minimum term.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[42]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[43]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  April 26, 2010.

      /s/ James K. Singleton, Jr.
      JAMES K. SINGLETON, JR.
      United States District Judge

---

[42] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

[43] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

15